UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GARY TOLBERT,

            Plaintiff,               Case No. 1:22-cv-371

v.                                      Honorable Paul L. Maloney

ROBERT M. CROMPTON et al.,

            Defendants.
_____/

**OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual allegations**

      Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Dr. Robert M. Crompton, Physical

Therapist Scott Weaver, Health Unit Manager Nicki Monroe, Jack Bellinger, MA, LLP, and Bureau of Health Care Services employee K. Nader in their individual capacities. Plaintiff also sues Corizon Health Services in its official capacity.

In his complaint, Plaintiff alleges that on May 10, 2019, he tore his Achilles tendon while playing basketball. On June 4, 2019, Plaintiff was taken to UP Health System and was seen by Dr. Robert H. Blotter (not a party) for surgery. Dr. Blotter recommended that Plaintiff remain in gravity equinus position for two weeks and that after two weeks, Plaintiff was to be placed in a cam boot in 10 degrees of equinus, where he was to remain for four weeks. Finally, Dr. Blotter indicated that Plaintiff would begin weight bearing as tolerated with therapy at six weeks post-op.

On June 18, 2019, Plaintiff was taken to Advance Center for Orthopedic and Plastic Surgery for a post-op visit, during which Dr. Blotter told Plaintiff that he could come out of the cam boot to do gentle range of motion exercises and for showering. On July 30, 2019, Plaintiff was again seen by Dr. Blotter, who stated that Plaintiff had some kelotic changes to the scar and could begin wearing gym shoes because regular shoes seemed to irritate his scar.

Two years later, on July 22, 2021, Plaintiff filed a grievance complaining of pain in his left Achilles and requesting his shoe detail and bottom bunk. Defendants Bellinger and Monroe knew that these accommodations had been recommended by Dr. Blotter. Defendant Bellinger denied Plaintiff's grievance, stating that Plaintiff had been seen by the medical professional (MP) the previous day and had been prescribed pain medication and physical therapy. (ECF No. 1, PageID.4; ECF No. 1-15, PageID.28.) Defendant Bellinger further noted that the MP was the medical authority and was responsible for management of Plaintiff's treatment. (*Id.*) Defendant Monroe reviewed the grievance response. (*Id.*)

On August 8, 2021, Plaintiff was taken to Duane Waters Medical Clinic and was seen by Defendant Weaver for complaints of chronic pain to his left Achilles Insertion. (ECF No. 1, PageID.4.) Defendant Weaver assessed Plaintiff's condition:

> He presents with decreased ankle ROM, strength, and increased pain/tenderness resulting in antalgic gait . . . . He was instructed in HEP [home exercise program] for ankle strengthening and ROM [range of motion] exercises to maintain ROM. He was advised to follow up with MSP in 6–8 weeks if no improvement. He could also benefit from ACMO for heel insert and will need it dispensed from ECF. He actually has one he used for left that he can use in right shoe. He would also benefit from medical detail to be able to wear his own gym shoes on the compound do decrease stress on right.

(Clinical Encounter Note, ECF No. 1-6, PageID.19.) Defendant Weaver indicated that the plan was to implement the recommendations in the assessment. (*Id.*) Defendant Weaver requested that Defendant Crompton cosign the order. (*Id.*)

Plaintiff asserts that Defendant Crompton denied the shoe accommodation and bottom bunk detail that had been recommended by Dr. Blotter, effectively denying him necessary treatment for his serious medical condition. Plaintiff states that Defendant Weaver failed to ensure that the plan for physical therapy was implemented.

On October 13, 2021, Defendant Nader responded to Plaintiff's step III grievance appeal by stating that Plaintiff's disagreement with the treatment plan did not constitute a denial of care. (ECF No. 1-16, PageID.30.) Defendant Monroe reviewed the grievance response. (*Id.*)

Finally, Plaintiff asserts that Defendant Corizon Health Services failed to provide him with a bottom bunk detail, shoe detail, knee drain, cortisone shot, and refused to comply with the specialist's post-op recommendations.

Plaintiff contends that Defendants violated his rights under the Eighth Amendment and seeks compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

4

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    A.    **Defendant Corizon Health Services**

Initially, the Court notes that Plaintiff names Defendant Corizon in its official capacity only. An official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (discussing that Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Plaintiff seeks only damages, so the *Ex Parte Young* exception does not apply.

In addition, Plaintiff's complaint fails to state a claim against Defendant Corizon Health Services. A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates—like Corizon, Inc.—can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins,* 487 U.S. 42, 54 (1988)). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.,* 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1996) (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson,* 579 F. Supp. 2d 831, 851-52 (E.D. Mich. 2008) (same).

Consequently, Corizon, like a governmental entity, may be held liable under § 1983 if it actually caused the constitutional deprivation. *See Starcher*, 7 F. App'x at 465 (citing *Monell,* 436 U.S. at 690). Liability in a § 1983 action cannot be based on a theory of *respondeat superior. City of Canton v. Harris,* 489 U.S. 378, 385 (1989). A custom is a practice "that has not been formally approved by an appropriate decision maker," but is "so widespread as to have the force of law."

*Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997). Moreover, the policy or custom "must be the moving force of the constitutional violation." *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir. 1994) (internal quotation marks omitted). In this case, Plaintiff fails to allege the existence a policy or custom. Because Plaintiff fails to allege the existence of a policy or custom, he necessarily fails to show that the policy or custom was the "moving force of the constitutional violation," as he is required to do to state a claim against Defendant Corizon (*Id.*) Therefore, Defendant Corizon is properly dismissed.

  **B.**  **Eighth Amendment**

Plaintiff claims that Defendants denied him necessary care for his serious medical condition in violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component,

the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with

7

knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (internal quotation marks omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has

received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1. Defendants Bellinger, Monroe, and Nader

Plaintiff fails to make specific factual allegations against Defendants Bellinger, Monroe, and Nader, other than to claim that they denied his grievance and subsequent appeal, and that this denial deprived him of necessary medical treatment. Defendant Bellinger responded to Plaintiff's July 22, 2021, grievance by noting that Plaintiff had been seen on July 21, 2021, by the medical professional, who was the medical authority and was responsible for management of Plaintiff's treatment. Defendant Bellinger noted in the grievance response that Plaintiff had been prescribed pain medication and authorized physical therapy. (ECF No. 1-15, PageID.28.) Defendant Nader responded to Plaintiff's step III grievance appeal on October 13, 2021, by stating that a review of Plaintiff's medical record did not support Plaintiff's claim and that his disagreement with the

9

treatment plan did not constitute a denial of care. (ECF No. 1-16, PageID.30.) Defendant Monroe was the reviewer on both the step I and step III responses.

As noted above, deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. The conduct of Defendants Bellinger, Monroe, and Nader in responding to Plaintiff's grievances does not support a finding of deliberate indifference. There is no indication that any of these Defendants were responsible for prescribing or authorizing medical treatment. Moreover, it appears that Plaintiff was receiving medication and that physical therapy had been authorized.

Furthermore, the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Additionally, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (discussing that there is no constitutional right to a grievance procedure).

Therefore, for these reasons, Plaintiff's Eighth Amendment claims against Defendants Bellinger, Monroe, and Nader are properly dismissed.

### 2. Defendant Weaver

Plaintiff makes a conclusory assertion that Defendant Weaver was deliberately indifferent to Plaintiff's serious medical needs. However, in his complaint, Plaintiff's only allegation against Defendant Weaver is that Defendant Weaver evaluated him on August 8, 2021. The evaluation, which is attached to Plaintiff's complaint, shows that Defendant Weaver instructed Plaintiff in a home exercise program for ankle strengthening and in exercises to maintain range of motion. (ECF No. 1-6, PageID.19.) Defendant Weaver advised Plaintiff to follow up with his medical service provider in 6–8 weeks if there was no improvement and told him that he could also benefit from using a heel insert in his right shoe. (*Id.*) Defendant Weaver noted that Plaintiff could use the insert he already possessed that had originally been used in his left shoe. (*Id.*) Finally, Defendant Weaver recommended that Plaintiff would benefit from a medical detail to be able to wear his own gym shoes on the compound and requested a co-signature from Defendant Crompton. (*Id.*)

Nothing in Plaintiff's complaint supports a finding that Defendant Weaver was deliberately indifferent to Plaintiff's medical needs. Instead, Plaintiff's allegations show that Defendant Weaver provided medical care to Plaintiff by evaluating Plaintiff's needs from the perspective of a physical therapist and made recommendations on that basis, which were to be co-signed by Defendant Crompton. To the extent that Plaintiff disagrees with Defendant Weaver's treatment recommendations, such disagreement with a physician "over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations

omitted)). Consequently, Plaintiff's Eighth Amendment claim against Defendant Weaver is properly dismissed.

### 3. Defendant Crompton

Plaintiff broadly asserts that Defendant Crompton disregarded the recommendations of the specialist who performed Plaintiff's surgery in violation of the Eighth Amendment. As stated above, Plaintiff's surgery was performed on June 4, 2019. According to Plaintiff's complaint, he was last seen by Dr. Blotter on July 30, 2019. (ECF No. 1, PageID.3.) Following this visit, Dr. Blotter stated that Plaintiff had some kelotic changes to the scar and could begin wearing gym shoes because regular shoes seemed to irritate his scar. (*Id.*) Plaintiff's complaint does not reflect that he had any issues with his treatment until July 22, 2021, when he filed a grievance stating that he had continuing pain in his left leg and complaining of the lack of a bottom bunk detail and shoe detail. (*Id.*, PageID.4.) At this point, Plaintiff had not seen Dr. Blotter for more than two years and any post-operative orders likely would have expired.

The attachments to Plaintiff's complaint show that he sent a kite to health care on August 14, 2021, complaining of pain in his legs and requesting a bottom bunk detail, a shoe detail, to have his knees drained, and a cortisone shot. (ECF No. 1-9, PageID.22.) Registered Nurse Sarah Luce responded by stating that Plaintiff did not meet the qualifications for a bottom bunk detail and that his chart was being reviewed by the medical provider for a shoe detail. Plaintiff was advised to continue the exercise program provided to him by physical therapy. (*Id.*)

Plaintiff sent a kite again on August 24, 2021, stating:

> I see that [health care] denied all [my] kites regarding my legs and shoe detail since I came back from Duane Waters. I am copying these kites now so I could sent [sic] them to Lansing and file my civil suit. My feet are in pain. These [sic] Therapist did not take [me] through no exercises, but he did recommend a shoe detail. Why are y'all denying me one! Pain is at a growing rate! And I need my legs drained. Could Y'all please stope [sic] charging me for the same leg issues?

(ECF 1-11, PageID.24.) Registered Nurse Rachel A. Lubitz responded to the kite by stating that the medical provider had requested a heel cup and an athletic shoe detail but that it might take some time, and that a nursing evaluation was being scheduled for Plaintiff's leg concerns. (*Id.*)

On August 18, 2021, Plaintiff filed a kite insisting that his surgeon had wanted him to have a gym shoe detail and that he still had not gotten one, that his feet hurt, that his Achilles had not healed properly, and that the exercises were not working. (ECF 1-13, PageID.26.) Plaintiff also protested that he should not be charged for a visit because it was the same issue. (*Id.*) RN Lubitz responded by stating that a chart review had been scheduled for the medical provider and that if Plaintiff requested to be seen for an evaluation, it was a chargeable visit. (*Id.*)

A review of Plaintiff's complaint and the exhibits shows that two years after his surgery, Plaintiff was experiencing pain and was requesting specific treatment to address that pain. Plaintiff was prescribed medication (ECF No. 1-15, PageID.28) and physical therapy. The medical provider had requested a heel cup and athletic shoe detail for Plaintiff. Plaintiff's concern that he was not receiving all of the treatment he desired or felt was necessary is not sufficient to support a finding of deliberate indifference because, as discussed above, "a patient's disagreement with his physicians over the proper course of treatment" is insufficient to state an Eighth Amendment claim. *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605. Furthermore, "a prison physician's decision to reject another doctor's treatment recommendation in favor of his [or her] own 'does not amount to deliberate indifference where both recommendations are made by qualified medical professionals' and the prison doctor's decision [wa]s made for a medical reason." *Lloyd v. Moats*, 721 F. App'x 490, 495 (7th Cir. 2017) (citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014); *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015)); *see, e.g.*, *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (finding that "inmates have no

13

constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise independent medical judgment" (citation omitted)). That is, if doctors, such as Defendant Crompton, use their own medical judgment, then they are "free to devise [their] own treatment plan." *Lloyd*, 721 F. App'x at 495 (citing *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012)).

Accordingly, for these reasons, Plaintiff's Eighth Amendment claim against Defendant Crompton will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  January 12, 2023                    /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge